UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONDA T.,[1]

                        Plaintiff

-vs-

COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.
_____

DECISION AND ORDER

1:20-CV-01538 CJS

INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the applications of Plaintiff for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits. Now before the Court is Plaintiff's motion (ECF No. 9) for judgment on the pleadings and Defendant's cross-motion (ECF No. 10) for the same relief. For the reasons discussed below, Plaintiff's application is granted, Defendant's application is denied, and this matter is remanded to the Commissioner for further administrative proceedings.

STANDARDS OF LAW

      The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[2]  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.  In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).  Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal

---

[2] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal

3

quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

In the administrative proceedings before the Commissioner, Plaintiff, who previously worked as a receptionist and administrative assistant, claimed to have become disabled as of August 25, 2016, due to a combination of impairments including depression, anxiety, post-traumatic stress disorder ("PTSD") and fibromyalgia.

On June 24, 2019, after Plaintiff's claim was denied initially, an Administrative Law Judge ("ALJ") conducted a hearing, at which Plaintiff appeared with an attorney. The ALJ took testimony from Plaintiff and a vocational expert ("VE"). The VE testified, in pertinent part, that a claimant who would be tardy, absent, or unable to complete a full workday, more than one day per month, would be unemployable. Tr. 69.

On July 25, 2019, the ALJ issued a decision finding that Plaintiff was not disabled at any

time between the alleged disability-onset date and the date of the decision. Tr. 15-27.   The ALJ applied the five-step sequential evaluation and found, in pertinent part, that Plaintiff had severe impairments consisting of "depressive disorder and anxiety disorder," and non-severe impairments including polysubstance abuse in remission and possible fibromyalgia.[3]   The ALJ further found that Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> The claimant is limited to unskilled work, with no fast-paced or strictly time-limited tasks; she can have occasional contact with coworkers and rare interaction with the general public; but the claimant should generally work on tasks alone with minimal social demands.   Finally, she can tolerate occasional changes in work setting or assignment.

Tr. 20.[4]   The ALJ found that with such RFC, Plaintiff could not perform her past relevant work, but could perform several other jobs in the national economy which the VE had identified. Tr. 26. Consequently, the ALJ found that Plaintiff was not disabled.[5]

Plaintiff subsequently commenced this action arguing that "[t]he ALJ failed to explain the discrepancy between [the medical] opinion evidence and the RFC, and the RFC is thus unsupported by substantial evidence."[6]   In particular, Plaintiff contends that it was reversible

---

[3] The ALJ found that Plaintiff's severe- and non-severe impairments did not, either singly or in combination, meet or medically equal a listed impairment. Plaintiff has not objected to the ALJ's findings at the first three steps of the sequential evaluation.

[4] In making this determination the ALJ found that Plaintiff's testimony about her limitations from her mental health symptoms, which included her claim of being housebound, was generally not credible, and that Plaintiff's treating psychiatrist did not have an accurate picture of Plaintiff's condition. Tr. 23 ("The testimony of the claimant was internally contradictory and only partially consistent with the medical record."); Tr. 25 ("[Plaintiff's treating psychiatrist's] familiarity with basic and material aspects of the claimant's ability to function is dubious:   she indicated that the claimant was unable to be treated regularly because she was housebound by anxiety; this is inconsistent with the claimant's testimony.").

[5] Plaintiff appealed, but the Appeals Council declined to review the ALJ's decision, making the ALJ's ruling the Commissioner's final decision.

[6] ECF No. 9-1 at p. 1.

5

error for the ALJ to give "partial weight" to the opinion of examining consultative psychologist Janine Ippolito, Psy.D. ("Ippolito") but to then exclude from the RFC, without explanation, moderate and marked functional limitations identified by Ippolito:

> Dr. Ippolito found Plaintiff was markedly limited in her ability to regulate emotions, control behavior, and maintain well-being and interact with supervisors, co-workers, and the public.  Dr. Ippolito also found Plaintiff had moderate limitations in her ability to sustain an ordinary routine and regular work attendance.  The ALJ provides reasoning as to why he does not accept the marked limitations in interacting with others.  Yet there is no discussion as to why the marked limitations in regulating emotions, controlling behavior, maintaining well-being[,] [and the] . . . moderate limitations in ability to sustain a routine and regular work attendance are not included [in the RFC finding].
>
> ***
>
> The VE testified [that] someone absent, late, or leaving work early more than 'about' one day per month is unemployable.  It is very likely someone with moderate limitations in sustaining a schedule would surpass that level provided by the VE.  If the ALJ did not think so, and he rejected this limitation, he still needed to explain that was what he was doing and why he was doing so.
>
> ***
>
> [T]he ALJ fail[ed] in his lack of explanation as to why [he rejected these] moderate and marked limitations.  He seemingly rejected them but failed to explain how or why he did so, which is error.

ECF No. 9-1 at pp. 12-14; *see also, id*. at p. 11 ("The ALJ failed to explain why he rejected limitations from opinions he gave [partial] weight and the RFC was thus unsupported by anything more than his own lay interpretation of the records.").

Plaintiff alleges that the ALJ similarly erred, with regard to the opinion of non-examining agency review psychologist T. Inman-Dundon, Ph.D. ("Inman-Dundon"), who found that Plaintiff would have moderate limitations in performing activities within a schedule, maintaining regular attendance, and completing a normal workday without interruptions from psychologically-based symptoms, by not including such limitation in the RFC finding despite purporting to give the

opinion "partial weight." *See*, ECF No. 9-1 at p. 12 ("Here, the ALJ gives partial weight to the opinions of Dr. Ippolito and Dr. Inman-Dundon [while] failing to explain how he incorporated some of their limitations into the RFC and cherry picking both opinions."). Overall, Plaintiff maintains that the ALJ simply failed to explain how the opinions of Ippolito and Inman-Dundon relate to the RFC finding, apart from stating that he gave both opinions "partial weight."

Plaintiff also maintains that insofar as the ALJ may have intended to adopt the moderate-to-marked limitations contained in the opinions of Ippolito and Inman-Dundon, it was not sufficient for the ALJ to account for such limitations in the RFC finding by merely limiting her to the type of simple unskilled work described therein. Plaintiff contends, rather, that the ALJ must explain how such specific limitations would affect her ability to work, and how limiting her to work involving "low-stress, simple tasks at a relaxed pace, with limited changes or contact with others"[7] would account for such limitations.

Defendant disputes Plaintiff's arguments and maintains that the ALJ's decision is free of reversible legal error and supported by substantial evidence. In particular, Defendant asserts that the "ALJ properly evaluated the medical opinion evidence in reaching his RFC finding[.]" ECF No. 10-1 at p. 10. Defendant contends, for example, that the ALJ agreed with Ippolito and Inman-Dundon that Plaintiff had moderate limitations in sustaining an ordinary routine and maintaining regular attendance and adequately accounted for them by limiting Plaintiff to simple unskilled work. *Id*. at p. 11. On the other hand, Defendant maintains that the ALJ rejected Ippolito's opinion that Plaintiff had marked limitations in regulating her emotions, controlling her behavior and maintaining her wellbeing. *Id*. at p. 12.

---

[7] Tr. 23, ALJ's Decision at p. 9.

The Court has carefully reviewed and considered the parties' submissions.

DISCUSSION

The ALJ's RFC Finding

Plaintiff contends that the ALJ's decision is the product of legal error and unsupported by substantial evidence, since the ALJ failed to explain why he did not incorporate the marked and moderate limitations identified by Ippolito and Inman-Dundon into the RFC finding.

Defendant, meanwhile, contends that the ALJ accepted the opinions of Ippolito and Inman-Dundon that Plaintiff had moderate limitations in sustaining an ordinary routine and maintaining regular attendance, but rejected the opinion of Ippolito that Plaintiff had marked limitations in regulating her emotions, controlling her behavior and maintaining her wellbeing. Those assertions by Defendant, however, are based on a mere interpretation of the ALJ's decision, since the ALJ never specifically stated that he was adopting or rejecting those limitations.  Indeed, as already noted, a normal everyday reading of the ALJ's discussion of Ippolito's opinion could easily lead one to infer that he accepted Ippolito's opinion that Plaintiff had marked limitations in regulating emotions, controlling behavior and maintaining wellbeing, while Defendant argues that he did the opposite.[8]

In any event, the Court finds that Plaintiff's argument has merit.  As relevant here, the general legal principles concerning RFC findings in SSDI and SSI cases are well settled:

> "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996) (emphasis added). Therefore, the ALJ's

---

[8] The Court assumes, from the entire record, that the ALJ did, in fact, intend to reject that opinion by Ippolito. The point, however, is that the ALJ never actually indicated that he was doing so.

> RFC determination need not perfectly correspond with any one of the opinions of the medical sources cited in his or her decision, so long as he or she has "weigh[ed] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

*Violet-Maria R. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0999 (CJS), 2021 WL 1169186, at *4 (W.D.N.Y. Mar. 29, 2021); see also, *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (Rejecting argument that ALJ had improperly substituted his medical judgment for expert opinion, stating that: "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Camille v. Colvin*, 652 F. App'x 25, 29 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion as the basis for the RFC but incorporated additional limitations based on, *inter alia*, the testimony of Camille that she credited. An ALJ may accept parts of a doctor's opinion and reject others.") (citations omitted).

As mentioned earlier, an ALJ is not required to discuss every piece of evidence upon which his decision rests. Moreover, even where an ALJ fails to provide an express rationale for a finding, courts must nevertheless uphold the finding where the ALJ's decision and the "clearly credible" evidentiary record otherwise indicate that the finding is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). A court, though, is not permitted to uphold an ALJ's decision where the basis for the ALJ's findings is unclear or where to do so would require the court to make credibility determinations or draw inferences that are within the province of the ALJ:

> Unfortunately, the ALJ's otherwise thorough opinion failed to set forth a specific rationale in support of the foregoing conclusion. Nonetheless, the absence of an

9

> express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence.
>
> ***
>
> [I]n spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence. Cases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ. In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision.

*Berry v. Schweiker*, 675 F.2d at 468, 469 (citations omitted).

Further, remand may be required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record," or where the ALJ's lack of analysis otherwise inhibits a meaningful review by the court. *See, Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence.  Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed.  *Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review*.") (emphasis added, citations omitted).

10

In the instant case the ALJ found that Plaintiff had the RFC to meet the mental demands of work on a sustained basis, even though Ippolito and Inman-Dundon both opined that Plaintiff was moderately limited by her mental impairments in maintaining regular work attendance and Ippolito further opined that Plaintiff was markedly limiting in regulating her emotions and controlling her behavior. The ALJ indicated that he considered the medical opinion evidence in accordance with the requirements of 20 C.F.R. § § 404.1520c and 416.920c. Tr. 20. However, the ALJ did not expressly discuss the "supportability" and "consistency" of those two opinions as required by those regulations. The ALJ's failure to do so was a procedural error. *See, Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) ("Here, the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record."). The error might nevertheless be harmless if a searching review of the record assured the Court that the substance of the regulations was not traversed. *See, id*. ("Despite the ALJ's procedural error, we could affirm if a searching review of the record assures us that the substance of the regulation was not traversed.") (citation and internal quotation marks omitted).

Here, however, the Court finds that the error was not harmless since it is unclear, despite the Court's review of the ALJ's decision and the evidentiary record, which parts of Ippolito's and Inman-Dundon's opinions the ALJ accepted and which parts he did not accept. In that regard, the ALJ devoted a paragraph to each of those opinions, but the discussion was vague and never specifically indicated which parts of the opinions were accepted or rejected, with one exception: The ALJ clearly stated that he did not accept Ippolito's opinion that Plaintiff had a marked limitation in interacting with others. Tr. 24. Otherwise, it seems that the ALJ may have accepted

11

the opinions of Ippolito and Inman-Dundon that Plaintiff was moderately limited in maintaining a regular work schedule and completing a normal workday without interruptions from psychological symptoms, since he did not expressly reject them. Tr. 24.  However, that is not clear.

Even less clear is whether the ALJ accepted the additional opinion of Ippolito that Plaintiff was markedly limited in her ability to regulate emotion, control behavior and maintain wellbeing. The ALJ noted, in that regard, that Ippolito felt Plaintiff was markedly limited both in her ability to interact with supervisors, coworkers, and the public, *and* in her ability to regulated emotions, control behavior, and maintain wellbeing.  As mentioned earlier, the ALJ expressly disagreed only that Plaintiff was markedly limited in interacting with other people, which could imply that he agreed Plaintiff was markedly limited in regulating emotion, controlling behavior and maintaining wellbeing. *See*, Tr. 24.  However, that would seemingly be inconsistent with the ALJ's finding at step three of the sequential evaluation that Plaintiff had only moderate, not marked, limitations in adapting or managing herself, which includes such things as managing psychologically based symptoms in the work setting.[9] *Powell v. Saul*, No. 3:18CV1488 (AWT), 2020 WL 1329696, at *5 (D. Conn. Mar. 23, 2020) (citing POMS DI34001.032-Mental Disorders- 03/24/2017 at 12.00E4); *see also, Pinckney v. Comm'r of Soc. Sec.*, 853 F. App'x 347, 350 (11th Cir. 2021) ("[A]dapting or managing oneself refers to the claimant's abilities to regulate emotions, control behavior, and maintain well-being in a work setting.") (citation omitted).

---

[9] The Commissioner seems to argue that the ALJ rejected Ippolito's opinion that Plaintiff had marked limitations in regulating emotions, controlling behavior and maintaining well being. *See*, Def. Memo of Law, ECF No. 10-1 at p. 12 ("Dr. Ippolito's marked limitation for regulating emotions, controlling behavior, and maintaining well-being are inconsistent with the objective evidence in the record.").

In sum, the Court is left with uncertainty as to how the opinions of Ippolito and Inman-Dundon may have factored into the ALJ's RFC finding.[10]  Remand for clarification is therefore required.

Plaintiff additionally maintains that even assuming the ALJ had properly analyzed the medical opinions and found that she was moderately or markedly limited in maintaining a regular work schedule, completing a normal workday without interruptions from psychological symptoms, regulating emotion, controlling behavior and maintaining wellbeing, the RFC finding is inadequate since it does not properly explain how such limitations would affect her ability to work.  (Plaintiff presumably also maintains that the ALJ's hypothetical questions to the VE were inadequate in describing her limitations, since they used the same terminology as in the RFC finding)  The Court agrees with Plaintiff that the present RFC finding does not adequately explain how it accounts for mental impairments affecting a claimant's ability to keep a normal schedule and maintain regular work attendance.

Defendant interprets the ALJ's decision as finding that Plaintiff had moderate limitations in sustaining an ordinary routine and regular work attendance.  If on remand the ALJ confirms that understanding, then the ALJ should explain how Plaintiff's moderate mental limitations, especially the limitation on maintaining regular work attendance, affect her ability to perform the type of work described in the RFC finding, and why they would not result in her being absent, tardy or unable to complete a normal workday more than one day per month.  Put differently, the ALJ should explain what a "moderate limitation" in maintaining regular work attendance

---

[10] At the same time, the ALJ essentially rejected the only other medical opinion of record concerning Plaintiff's mental abilities, authored by Plaintiff's treating psychiatrist.

13

would look like in Plaintiff's case, and how it would be accounted for by limiting her to "low-stress, simple tasks at a relaxed pace, with limited changes or contact with others," (Tr. 23). *See, Reynolds v. Colvin*, No. 3:13-CV-396 GLS/ESH, 2014 WL 4184729, at *5 (N.D.N.Y. Aug. 21, 2014) ("If it is possible to match terms like 'mild,' 'moderate,' and 'marked' with discrete percentages of time that individuals likely cannot meet mental demands of work, that prerogative lies exclusively with the Commissioner or a qualified expert witness, not a reviewing court. On the other hand, 'moderate' inevitably contemplates some diminishment in capacity for work. And, if the term is suitable for use in residual functional capacity assessments, it surely must connote something susceptible to objective correlation. Given the additional evidence adduced by Reynolds through cross examination of VE Sypher that a person with 10% inability to meet mental demands of ordinary work is unemployable, it was incumbent on ALJ Gale to articulate a plausible reason or explanation as to why Reynolds's moderate mental limitations do not rise to that level."); *see also, id.* at *6 ("[I]f there is an evidentiary basis for concluding that semi-skilled and unskilled work automatically takes into account the moderate mental limitations just mentioned, it appears nowhere in the decision."); *Michele D. v. Kijakazi*, No. 20-CV-1168F, 2022 WL 2900776, at *5 (W.D.N.Y. July 22, 2022) ("[T]he ALJ, without explanation, fails to incorporate into the RFC formulation any limitations regarding Dr. Ippolito's findings, including that Plaintiff has mild to moderate limitations with regard to sustaining concentration and performing tasks at a consistent pace, moderate limitations sustaining an ordinary routine and regular attendance at work, and marked limitations in regulating emotions, controlling behavior, and maintaining well-being based on Plaintiff's emotional distress. Although limiting a claimant to unskilled work has been held to accommodate mild to moderate 'limitations relating to stress and production pace,'

14

see *Tatelman v. Colvin*, 296 F.Supp.3d 608, 613 (W.D.N.Y. 2017) (citing cases), the court's research reveals no case law establishing that limiting a claimant to unskilled work sufficiently accommodates marked limitations to regulating emotions, controlling behavior, and maintaining well-being."); *D.G. v. Kijakazi*, No. 21-CV-01655-NYW, 2022 WL 2666033, at *10 (D. Colo. July 11, 2022) ("The court respectfully concludes that the limitation to performing simple, routine tasks does not obviously incorporate D.G.'s specific limitations in concentration, persistence, or pace: maintaining attention and concentration for extended periods, working with or in proximity to others without being distracted by them, or completing a normal workday and workweek without interruptions and to perform at a consistent pace without unreasonable breaks, which are functional abilities needed for any job. *See* Social Security Administration Program Operations Manual System ('POMS')11 DI § 25020.010(B)(2)(a). '[T]he ability to perform simple tasks differs from the ability to stay on task.' *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). 'It is the ability to stay on task—not the degree of complexity of the task itself—that is addressed by concentration and persistence.' *Shaw v. Berryhill*, No. 1:16-cv-00285-LF, 2017 WL 4119617, at *6 (D.N.M. Sept. 15, 2017). Because the connection between the moderate limitations and the assignment of 'simple, routine tasks' is not obvious, *Parker*, 772 F. App'x at 616, the mere limitation to simple work is insufficient, alone, to account for D.G.'s moderate limitations.").

Additionally, the ALJ should ensure that any such limitations are accurately spelled out in any hypothetical questions posed to the VE. *See, e.g.*, *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("When it comes to the RFC finding, we have likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace. More

15

to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift.") (citations omitted).

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 9) for judgment on the pleadings is granted, Defendant's cross-motion (ECF No. 10) for the same relief is denied, and this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
September 19, 2022

ENTER:

CHARLES J. SIRAGUSA
United States District Judge